UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
01-CV-533(JMR/FLN)

Northwest Airlines, Inc. )
)
v. ) ORDER
)
R&S Company S.A. et al. )

Northwest Airlines, Inc. ("NWA"), seeks an order compelling arbitration in a dispute between itself and the defendants. The parties had begun the arbitration process, but the process was arrested when defendants commenced a separate action in the nation of Lebanon.

This matter is before the Court on cross-motions. NWA seeks a preliminary injunction compelling defendants to confine any and all claims arising out of, or relating to, a Passenger General Sales Agency Agreement ("GSA"), to the pending arbitration before the American Arbitration Association ("AAA"). Defendants move to dismiss or for summary judgment, asserting a lack of personal jurisdiction, invoking doctrines of comity and forum non conveniens, and claiming the arbitration clause is not applicable to the Lebanese action.

I. Facts

A. The Parties

NWA is an air travel company incorporated in the State of Delaware and headquartered in Eagan, Minnesota. Defendant R&S

FILED NOV 30 2001
RICHARD D. SLETTEN, CLERK
JUDGEMENT ENTERED ______
DEPUTY CLERK'S INITIALS ______

Company S.A. has its principal place of business in Cairo, Egypt. [Wilson Aff., Ex. 1]. The parties are signatories to a GSA Agreement, in which R&S Company S.A. provided NWA with sales and other services in Bahrain, Oman, Saudi Arabia, Egypt, and Lebanon. Id.

Defendant R&S SAL claims to be the successor to R&S Company S.A. It further claims that at the time it signed the GSA, R&S Company S.A. was a registered Liberian company. R&S SAL claims it is a Lebanese company. [Wilson Aff., Ex. 2.] NWA denies R&S SAL is an actual party to the GSA, and claims that the only fact relevant to this motion is that the R&S companies, in whatever form, are making claims against it based on its relationship to the GSA and NWA. Because defendants are unified in their claims, they will be collectively referred to as "R&S."

Mr. Lababidy, a Lebanese citizen, was President and majority owner of R&S. Some time ago, Mr. Lababidy temporarily moved his residence and business operations away from Lebanon because of the Lebanese Civil War. [Lababidy Aff., ¶ 5.] While he now claims R&S has never been registered in Egypt, the terms of the GSA name Egypt as R&S's principal place of business. During the period when the parties functioned under the GSA, R&S received correspondence in that country.

Article 14 of the GSA provides that it would remain in force "until terminated by sixty days notice in writing given by either

party to the other." [Wilson Aff., Ex. 1].

The agreement also contains a choice of law provision stating:

> Each party agrees to abide by the laws of the country in which said party's performance obligations are intended to be carried out. As between the parties, the laws of the United States of America shall govern in cases of dispute.

Id., Art. 16.

The agreement also contains an arbitration clause stating:

> In the event of any dispute concerning the interpretation of application of this Agreement or concerning any rights or objections based on or relating to this Agreement, such disputes shall be referred to and finally settled by arbitration in accordance with the rules of the American Arbitration Association, if no amicable settlement can be reached.

Id., Art. 16.

Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, enables the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"). The United States acceded to this Convention on September 30, 1970, reprinted 9 U.S.C. § 201, et seq. The United States, Bahrain, Oman, Saudi Arabia, Egypt, and Lebanon are all signatories to the Convention. See U.S. Dep't of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force as of January 1, 2000 336-37 available at http://www.state.gov/www/global/legal_affairs/tif_old.pdf (2000). The Convention governs foreign arbitration disputes resulting from international commercial transactions. See Filanto, S.o.A. v. Chilewich Int'l

Corp., 789 F. Supp. 1229, 1234 (S.D.N.Y. 1992).

Article II of the Convention directs that:

> The court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

9 U.S.C. § 201. The United States' ratification of the Convention makes it part of the supreme law of the land, as enforceable as Congressional enactments. See Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 958 (10th Cir. 1992). The Court, therefore, finds that the Convention applies to this commercial transaction.

B. The Dispute

On October 28, 1999, NWA gave R&S written notice terminating the GSA effective December 31, 1999. [Lababidy Aff., Ex. 2.] NWA agrees its sole reason for doing so was to transfer all sales responsibilities in the territory to KLM, its strategic alliance partner. Id. NWA simultaneously filed a demand for arbitration with the AAA seeking, in part, a determination that it owed no compensation to R&S, notwithstanding R&S's claim. [Wilson Aff., Ex. 5.] R&S asks for damages from NWA, claiming NWA wrongfully terminated the GSA.[1]

---

[1]R&S bases its claim for damages on a provision of Lebanese law which prohibits arbitration of matters such as these, and which does not honor choice of law provisions.

On January 15, 2001, NWA amended its demand seeking monetary compensation for tickets already sold. Id., Ex. 6. R&S answered and counterclaimed against NWA. Id., Ex. 2. R&S objects to arbitration, particularly claiming Lebanon's courts have jurisdiction over that country's Commercial Representation Law ("LCRL") - which R&S claims governs its representation termination claim in Lebanon. R&S also asserts the GSA's choice of law and arbitration provisions are unenforceable under the LCRL. R&S further alleges NWA has miscalculated the amount it claims R&S owes.

NWA seeks to compel the Minnesota arbitration and enjoin the Lebanese proceeding. R&S counterclaims, seeking to dismiss this action for want of personal jurisdiction over defendants. R&S invokes doctrines of comity and forum non conveniens, and asserts the Lebanese claims lie beyond the scope of the arbitration clause.

## II. Analysis

### A. Personal Jurisdiction

The requirement that jurisdiction be established as a threshold matter is inflexible and without exception. Godfrey v. Pulitzer Publishing Co., 161 F.3d 1137 (8th Cir. 1998). To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. Digi-Tel Holding, Inc. v. Proteq Telecommunications, Ltd., 89 F.3d 519, 522 (8th Cir. 1996). Once

challenged, a plaintiff has the burden of proving personal jurisdiction. Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992), cert. den., 113 S.Ct. 304 (1992).

It is well established that Minnesota's long-arm statutes extend jurisdiction to the full extent permitted by the due process clause. Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citing Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn. 1985)). Therefore, this Court need only determine whether jurisdiction over R&S is consistent with constitutional due process. Soo Line, 950 F.2d at 528.

Constitutional due process requires "minimum contacts" between the non-resident defendant and the forum, such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). The conduct of a defendant and its connections to the forum state must be such that it "should reasonably anticipate being haled into court there." Guinness Import Co. v. Mark VII Distribs., 153 F.3d 607, 614 (8th Cir. 1998), (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Minimum contacts exist when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."

Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985). "Purposeful availment" means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party. Id.

The Eighth Circuit Court of Appeals has established a five-factor test to determine the sufficiency of defendant's contacts: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Soo Line, 950 F.2d at 529. (quoting Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977)). Of these factors, the first three are the most important. Id. at 529.

After considering the law and facts here, the Court finds NWA has made a prima facie showing R&S is subject to personal jurisdiction in Minnesota. This case is analogous to the situation in Burger King, where the Supreme Court found a 20 year interdependent contract, plus one brief training visit, sufficient to make litigation foreseeable. Burger King, 471 U.S. at 479, 482.

Here, Mr. Lababidy personally visited Minnesota on several occasions. While R&S claims to have no personal property, assets, bank or financial accounts, offices, or personnel in Minnesota, the facts show that Mr. Lababidy, on R&S's behalf, traveled to

Minnesota to negotiate with NWA [Fuller Aff., Ex. 2, 3] and to participate in mediation concerning R&S's relationship with NWA. [Lababidy Aff., ¶ 3]. Those negotiations led to the 1990 GSA Agreement between the parties which underlies this case. [Wilson Aff., Ex. 1.] It appears Mr. Lababidy traveled to Minnesota approximately six times on business matters during the contract period. [Lababidy Aff., ¶ 3.]

Mr. Benedict Thomas, R&S's General Manager - Finance & Administration, directed correspondence, sales reports, and tickets to NWA in Minnesota on a monthly basis. [York Aff., ¶ 4, 5]. The GSA Agreement, which the parties negotiated, has a choice of law provision, selecting the law of the United States to govern its construction. [Wilson Aff., Ex. 1.] The Eighth Circuit considers that "while a choice of law provision in itself is insufficient to create personal jurisdiction, it remains a relevant consideration in determining whether a defendant has purposefully availed itself in the forum state."[2] Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1390 (8th Cir. 1997).

In light of these facts, the Court finds NWA has established a prima facie showing of sufficient contacts to subject R&S to

---

[2]Plaintiffs correctly note that in cases where the parties designate the "laws of the United States" as their choice of law, a court applies the law of that state having the most significant relationship to the transaction. See Supply & Bldg. Co. v. Estee Lauder Int'l., 1999 WL 178783, *2, 95 Civ. 8136 (S.D.N.Y. March 31, 1999).

personal jurisdiction in Minnesota.

B. Preliminary Injunction

NWA seeks a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure. When considering whether to issue a preliminary injunction in the Eighth Circuit, a Court must apply a four-part balancing test and consider: (1) the threat of irreparable harm to the moving party; (2) the state of balance between this harm and the injury that granting the injunction will inflict on the other party; (3) the probability that the movant will succeed on the merits of the claim; and (4) the public interest. Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1993). Probable success on the merits is the most significant factor. See S&M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). And so the Court turns to the application of the Dataphase test to the facts of this case.

1. The threat of harm to NWA

NWA faces significant harm if a preliminary injunction is not granted. If R&S is allowed to pursue its wrongful termination claim in Lebanon, NWA faces the precise risk it bargained and contracted to avoid. It will be forced to confront an unfamiliar forum, applying unfamiliar law.

The risk is not only contractual; the parties chose arbitration as opposed to litigation. Businesses frequently prefer the less expensive, and frequently faster, arbitral process, purely

as an economic decision. This business decision would be undermined unless the Court invokes its injunctive power. Failure to do so will also subject NWA to the risk of simultaneous litigation in Lebanon, and the corresponding risk and uncertainty of inconsistent results.

2. <u>The threat of harm to the non-moving party</u>

The Court finds no significant risk of harm to R&S. An injunction will, of course, foreclose R&S's late-sought application for relief in Lebanon's courts. But this risk, such as it is, is ameliorated by the GSA Agreement's broad arbitration clause covering "any dispute concerning the interpretation of application of th[e] Agreement or concerning any rights or objections based on or relating to th[e GSA] Agreement." As a result, R&S can assert virtually any claim it has arising out of the GSA Agreement in the forum it contractually selected.

R&S's strongest argument -- that only the courts of Lebanon can protect its rights under the LCRL -- rings hollow. First, R&S declared its Egyptian citizenship in its contract with NWA. Its now-asserted Lebanese citizenship was never claimed until it filed its case in that country, after more than a decade during which it reaped the benefits of the GSA Agreement, and subsequent to the initiation of the arbitration proceedings here.

Even assuming R&S ought to be entitled to invoke the LCRL, any injury resulting from a purported wrongful termination of the GSA

by NWA can be heard in the arbitral forum. If the injunction is granted, R&S will still be able to arbitrate any of its claims through the pending arbitration -- as it already contractually agreed to do. The Court considers the risk of harm to the non-moving party in this case to be minimal.

3. Likelihood of success on the merits

On the record before the Court, it appears NWA is likely to succeed on the merits of its claim that the GSA agreement requires R&S to arbitrate its wrongful termination claim through the AAA. Both the United States and Lebanon are signatories to the New York Convention dealing with international commercial arbitration. Article II of that Convention imposes a mandatory duty on the courts of a Contracting State to recognize and enforce an agreement to arbitrate unless the agreement is "null and void, inoperative or incapable of being performed." 9 U.S.C. § 201. See Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 958 (10th Cir. 1992).

When considering whether to refer a matter to arbitration under the New York Convention, a court must perform a limited, four-part inquiry, asking: (1) Is there an agreement in writing to arbitrate the subject of the dispute? (2) Does the agreement provide for arbitration in the territory of the signatory of the Convention? (3) Does the agreement arise out of a legal relationship whether contractual or not, which is considered as

commercial? (4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states? See id. (citing Ledee v. Ceramiche Ragno, 684 F.2d 184, 186-87 (1st Cir. 1982)). If the answers are "yes," then the Court must order arbitration unless the agreement is null and void or incapable of being performed. Ledee, 694 F.2d at 187.

Applying that regime here, the Court finds the first question is answered in the affirmative. The GSA contains a written arbitration clause. The parties agreed to arbitrate all disputes "concerning the interpretation or application" of the GSA agreement or "concerning any rights or objections based on or *relating to* th[e] Agreement." (emphasis added). The claims R&S are attempting to vindicate in its Lebanese action certainly "relate to" the GSA Agreement. Accordingly, those claims are subject to the GSA Agreement's arbitration clause. It is well established that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (holding that "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability").

Under question two, asking whether the agreement provides for arbitration in the territory of a signatory to the Convention, the

answer is "yes." The GSA sets the arbitration "in the GSA's defined territory or the United States as determined by the parties or in the absence of agreement, by the arbitral tribunal." [Wilson Aff., Ex. 1.] All parties agree the countries in the "defined territory" and the United States are signatories to the Convention.

There is no dispute that questions three and four are also answered "yes". These issues arise out of a legal, contractual, commercial relationship, and the commercial relationship has at least one non-American citizen and bears a reasonable relation to another foreign state. See 9 U.S.C. § 202. R&S, wherever it has lighted after its peregrinations, is from a locus other than the United States. Its sales and service functions occurred in, and related to, a number of foreign countries. Having answered all four inquiries in the affirmative, the Court considers it likely that NWA will succeed on its claim of entitlement to arbitrate in the United States.

3. Public interest

The United States has adopted the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. 9 U.S.C. § 201, et seq. When it did, the Nation expressed the interest of the public as a whole. "The goal of the Convention is to facilitate and stabilize international business transactions by promoting the enforcement of arbitral agreements in contracts involving international commerce." Transit Cas. Co. v. Certain

Underwriters at Lloyd's of London, 199 F.3d 619, 620 (8th Cir. 1997). The public interest is served by promoting stability in international contracts by enforcing bargained for arbitration clauses.

C. Issues Relating to a Foreign Tribunal

Having decided the Dataphase factors and the Convention's factors in favor of issuing a preliminary injunction, the Court refers the parties to arbitration, pursuant to its powers in 9 U.S.C. § 206 and in accordance with their written agreement. Further, this Court enjoins R&S from further prosecution of the lawsuit in Lebanon.

The Court has the discretionary power to enjoin a party before it from pursuing a parallel proceeding before a foreign tribunal. See Garpeg, Ltd. v. United States, 583 F. Supp. 789, 798 (S.D.N.Y. 1984); Medtronic, Inc. v. Catalyst Research Corp., 518 F. Supp. 946, 954 (D. Minn. 1981). This power should be used sparingly, because it effectively enjoins a foreign sovereign's tribunal. See Garpeg, 583 F. Supp. at 798 (collecting cases). The question, ultimately, becomes one of comity. Id. The threshold question is whether the parties are the same, and the resolution of the first action will be dispositive of the action to be enjoined. See Cargill Inc. v. Hartford Accident and Indeminity Co., 531 F. Supp. 710, 715 (D. Minn. 1982).

A foreign action should be enjoined when it would (1)

frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi-in-rem jurisdiction; or (4) where the proceedings prejudice other equitable considerations. Id. Similarly, an injunction is appropriate if adjudication of the same issue in separate actions would result in "unnecessary delay, substantial inconvenience and expense to the parties and witnesses, and where separate adjudications could result in inconsistent rulings or a race to judgment." Id.

These requirements appear to be fulfilled in this case; the parties are the same -- NWA and R&S are the parties to both the arbitration and the Lebanese litigation. The predominant issues are the same -- whether NWA terminated its GSA agreement properly, and whether R&S is owed money for a wrongful termination of the GSA agreement. The arbitration was undertaken more than a year before the Lebanese suit was filed, and the arbitration should resolve the claims brought in that suit.

Although a federal court is properly wary of interfering in a matter of a foreign sovereign, even when it has the power to do so, it does so here. See Medtronic, 518 F. Supp. at 955. This Court is concerned that separate adjudications could result in inconsistent rulings or a race for judgment. Id. Further, the Court is not aware of any proceedings having occurred in Lebanon other than a filing. Therefore, this Court's actions will not

unduly interfere with the actions of the Lebanese court. Moreover, it is not at all clear that R&S is actually a Lebanese company – as it lately claims – making its claim for protection under the LCRL problematic. The contracting documents all list R&S as an Egyptian-based company. Finally, the parties agreed in writing to arbitrate the subjects of its dispute, and for United States law to govern their disputes.

Accordingly, IT IS ORDERED that:

1. Plaintiff's motion for a preliminary injunction is granted. The parties are ordered to arbitrate the issues arising out of or relating to the GSA agreement in the State of Minnesota, and the defendant is enjoined from pursuing such claims elsewhere. [Doc. No. 20]

2. Defendant's motion to dismiss or for summary judgment is denied. [Doc. No. 9]

3. The parties may submit briefs, no longer than 10 pages in length, within 10 days of this Order, on the question of whether this matter should be dismissed at this point, the Court having resolved all matters at issue.

Dated: November 29th, 2001

JAMES M. ROSENBAUM
United States Chief District Judge

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500